CENTRAL TRUST CO. OF NEW YORK v. GRANTHAM et al.

(Circuit Court of Appeals, Seventh Circuit. December 2, 1897.)

No. 342.

1. FEDERAL JURISDICTION—STAYING PROCEEDINGS IN STATE COURT—PRIORITY.
　　Where a roadway of a railroad company is laid out in part across private property, which has not been condemned, the fact that a federal court, in a suit to foreclose a mortgage given by the company, to which the owner of the private property is not a party, decrees a sale, including the roadbed, which is sold and conveyed accordingly by its master, gives it no jurisdiction, by reason of priority or otherwise, to entertain a new suit to enjoin the enforcement of a judgment in ejectment rendered by a state court in an action by the owner of the private property, even though the applicant for an injunction claims through the master's sale, and was not made a party to the action in the state court.

**2. SAME—INTERSTATE COMMERCE—MAIL ROUTE.**

The fact that property affected by a judgment in ejectment rendered by a state court is used as a highway for interstate commerce and as a national mail route cannot be urged in support of the jurisdiction of a federal court over a suit to restrain the enforcement of the judgment, which is brought by a party not suing or authorized to sue on behalf of the public, and in which the United States or the attorney general is not a party complainant.

Appeal from the Circuit Court of the United States for the District of Indiana.

On January 24, 1896, appellant exhibited in the circuit court of the United States for the district of Indiana its bill of complaint, which, barring the exhibit therein referred to, was in words following:

"The Central Trust Company of New York, a corporation created by and existing under the laws of the state of New York, and a citizen of such state, brings this its bill of complaint against Wesley Grantham, who is a citizen of the state of Indiana, and a resident of the aforesaid district, and Charles E. Davis, who is sheriff of Montgomery county, Ind., and a citizen of the state of Indiana, and a resident of this district, and the Chicago & Southeastern Railway Company, which is a corporation organized and existing under the laws of the state of Indiana, and a citizen and resident of this district, and thereupon the complainant shows to the court:

"(1) That said railway company is now, and for some years last past has been, the owner of the line of railway about 100 miles in length, extending from Anderson, Ind., through the counties of Madison, Hamilton, Boone, Montgomery, Parke, and Clay, to the city of Brazil, in said last-named county, together with certain equipment and appurtenances thereto belonging. Said line of railroad is now and for some years has been an operated railway, with several trains running each way over said road daily, carrying passengers, freight, and United States mails, and said railroad is now engaged in the business of maintaining a public highway and performing its duties as a carrier thereon.

"(2) On October 30, 1891, the said defendant railway company executed and delivered according to law, to the complainant and one Josephus Collett, a certain deed of trust, in writing, wherein, for the purpose of borrowing money to construct, complete, and equip its railroad, it duly bargained, sold, granted, conveyed, and confirmed unto the complainant and said Collett all and singular the line of railway as the same then was or at any time thereafter might be constructed, together with all the equipment and appurtenances thereunto belonging, and the tolls, income, and revenue to be levied therefrom, and all and singular the powers and franchises thereto belonging. Such deed of trust was, shortly after its execution and delivery, duly recorded in each of the counties in which the said line of railroad or any part thereof was situated, including therein the county of Montgomery, in the state of Indiana, and such mortgage has ever since such execution and delivery and record vested in the complainant an interest in and lien upon said line of railway and each and every part thereof. In the year 1893 the said Josephus Collett departed this life, and no successor has ever been appointed to fill the vacancy occasioned by his death, and the said complainant has ever since the decease of said Collett been sole trustee in such conveyance.

"(3) Such conveyance was executed to secure the payment of an issue of bonds authorized to be certified thereunder upon the terms and conditions and to the amounts recited in said conveyance, reference being thereto had, a copy of which conveyance is filed and made a part of this bill of complaint as Exhibit A.

"(4) In accordance with the provisions and authorizations of such conveyance, the said railway company on or about the execution of said instrument, in 1891, duly executed six hundred and twenty-five (625) bonds, of $1,000 each, under the said conveyance, and complainant thereupon duly certified and attested the same; and thereupon the said $625,000 of bonds of said defendant railway company were duly negotiated and sold in good faith and for value, and have ever since been outstanding, and are now held by divers persons and corporations, and no part of the principal thereof has been paid.

"(5) The said line of railroad now owned by the defendant railway company

formerly belonged to the Anderson, Lebanon & St. Louis Railroad Company. a corporation organized under the laws of the state of Indiana, which about the year 1874 located and graded a continuous roadbed and line of railroad extending from Anderson westwardly into and through Montgomery county, Ind., to Waveland. That in the course of the construction of said road, in 1874 or 1875, the said Anderson, Lebanon & St. Louis Railroad Company entered upon the lands of one Thomas H. Messick, lying in Montgomery county, Ind., with the full knowledge and acquiescence of said Messick, who was then and there in possession of said farm, and located, laid out, and fully graded its railroad entirely across his said farm, and for many miles on each side thereof, continuously. Said last-named company, in 1875, mortgaged its railroad made and to be made, including its roadbed, rights, and franchises, to Kountz & Crosby. as trustees, to secure an issue of bonds, of which a large number were issued and negotiated to innocent holders for value. The said mortgage to Kountz & Crosby was duly recorded in all counties along the line, including the said county of Montgomery. For default in payment of interest on such mortgage. suit for foreclosure was brought in this court by the said Kountz & Crosby, and final decree of foreclosure was rendered therein against said Anderson, Lebanon & St. Louis Railroad Company. The property described in said mortgage was sold in 1885, and the sale confirmed, and conveyance thereof duly made by the master of this court to the Midland Railway Company, which entered into the possession of the property so purchased by it under the decree of this court, and completed the said railroad entirely through Montgomery county, Ind., about the year 1887, including that portion across the farm and lands of the said Thomas H. Messick; and the said railroad has ever since 1887 been continuously operated from Anderson across, over, and upon the right of way originally laid out and constructed, in 1874 or 1875, across the lands of said Messick. .

"(6) In the year 1891, the defendant railway company purchased and acquired all and singular the line and road so sold under the decree of foreclosure in this court, and has ever since operated the same over and across the said right of way and between the terminals aforesaid, and the said railroad, including that portion thereof upon and across the said right of way across the farm belonging to the said Messick at the time the road was located and constructed as one continuous line, and to tolls and revenues thereof, constitute the only security for the bonds outstanding under the mortgage executed to the complainant.

"(7) The defendant Charles E. Davis is the sheriff of Montgomery county, Ind. He now holds in his hands as such sheriff a writ issued under the seal of the circuit court of Putnam county, Ind., upon a judgment in ejectment therein rendered in favor of the defendant Wesley Grantham, and against the Chicago & Southeastern Railway Company. The said writ so held by the said Davis, as sheriff, commands him to dispossess the said railroad company from the possession, occupancy, and enjoyment of that part of its railroad described as the right of way strip of the said railroad upon and across the lands in Montgomery county formerly belonging to Thomas H. Messick, and now claimed to be owned by the said Wesley Grantham, and requiring the said sheriff to deliver possession of that section of the said railroad into the possession, control, and enjoyment of the said Grantham. Complainant is advised, and therefore so charges, that the said writ issued out of the said Putnam circuit court upon a final judgment in ejectment therein rendered in an action prosecuted by the said Wesley Grantham against said railway company, wherein and whereby a final judgment of ouster was rendered against said railroad company of the possession of the said right of way strip aforesaid. The complainant charges that the said defendant Grantham acquired whatever interest or title he holds in and to the said land long after the record in Montgomery county of the mortgage to complainant, and several years after there had been a completed and operated railroad over and across the said right of way in dispute; and that being charged with full notice of the rights of the public in and to the said property as an unbroken line of communication, and of the further record of the complainant in and to the said premises, wholly failed, neglected, and refused to make this complainant a party to the said ejectment proceeding, so that it is in no manner whatever bound thereby; and the said judgment in ejectment of the Putnam circuit court, and the writ of possession thereon is-

sued, is, as against the recorded prior rights of the complainant, absolutely null and void.

"(8) The said defendant Davis, as such sheriff, acting under the direction of the defendant Grantham, now threatens to forthwith serve the said writ of dispossession in the hands of said sheriff, and deliver the section of the main operated railroad into the possession and enjoyment of the said Grantham, and complainant verily believes that unless enjoined by the order of this court the said writ will be so served immediately, and the said line of railroad severed, so that it will be rendered impossible to operate the same as a continuous line of road, or to run through trains thereon, or to transport the United States mails between the termini thereof.

"(9) The complainant charges that, both by the statute law of the state of Indiana and a uniform course of decisions constituting a rule of property as to constructed and operated railways, the only remedy which said Grantham can prosecute against the said railway company or the interests of this complainant is to obtain compensation for the taking of said property, and he is not entitled as against the recorded lien of this complainant, and its right to hold its security upon the unbroken line of railroad, to sever the security held by the complainant for the benefit of said $625,000 bonds by means of a judgment or writ in ejectment in which the complainant has never had its day in court; and that as to complainant such litigation and the writ now in the hands of said Grantham does not constitute due process of law, and complainant has a right to equitable relief as against the enforcement of the same. Complainant charges that, if the said writ of ejectment be allowed to be served, it will sever the said railroad, and prevent its operation, and prevent the receipts of its tolls and income, and greatly inconvenience the public, and inflict great and irreparable injury upon your complainant and the bondholders whom it represents, and to an amount largely in excess of the sum of $2,000, exclusive of interest and costs, and contrary to equity.

"The premises considered, complainant prays that the several defendants be duly summoned to appear and answer the premises, but without oath; and that upon the final hearing said Davis, as such sheriff, and said Grantham, and all persons claiming by, through, or under him, be perpetually enjoined from the enforcing of said judgment in ejectment, to which complainant was not a party, or in any way whatever, under color of that litigation or judgment, to seize upon or take possession of the said right of way strip, or any part thereof, or interfere in any way with the continuous operation of trains by the railroad company over, upon, or across the said right of way strip in the same manner as now operated; and, this being a case of emergency, the complainant prays that the court will temporarily restrain the said Davis and Grantham from executing the said writ of ejectment until a motion can be heard for a regular temporary injunction."

A stay order was thereupon made in accordance with the prayer of the bill. On the 21st of February thereafter, on motion of the defendants to dismiss the bill and dissolve the injunction, the following order was entered: "It is therefore ordered, adjudged, and decreed by the court that the bill be, and the same is hereby, dismissed for want of jurisdiction, and that the defendants recover their costs, taxed at $———, from the complainants. And, the complainants having advised the court of their intention to file their petition for appeal, the court doth find the motion to dissolve the restraining order ought to be, and it is hereby, overruled; and it is therefore further ordered, adjudged, and decreed by the court, on motion of the complainants, that the restraining order be, and the same is hereby, continued in force during the pendency of such appeal, and until the decision thereof by the circuit court of appeals and the filing of its mandate in this court." Appellant thereupon perfected its appeal, and in July following brought the record to this court.

Frank F. Reed, for appellant.

Tilghman E. Ballard, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge (after stating the facts as above). The order of dismissal was made pursuant to the rule expressed in

section 720 of the Revised Statutes of the United States, and, as stated in the brief for appellant, the case of Dillon v. Railway Co., 43 Fed. 109–114, was deemed in the circuit court to be specially in point. Section 720 reads:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state except in cases where such injunction may be authorized .by any law relating to proceedings in bankruptcy."

In practice this section has been treated, apparently, as being a statutory sanction for that rule whereby a state court, without any statutory obligation, declines to interfere by injunction with proceedings in a federal court. The decisions on the subject are collected, and to some degree discussed, in a footnote to the case of Association v. Hurst, 7 C. C. A. 598, 59 Fed. 1. Hemsley v. Myers, 45 Fed. 289, may be specially referred to.

So far as concerns the force of section 720, the question here, therefore, would seem to be one of priority in time between the circuit court of the United States and the circuit court of Montgomery county, in the state of Indiana. It is contended that the bill filed by appellant is really dependent on, or supplemental to, the foreclosure proceeding of 1885; in other words, that the priority in time is with the circuit court of the United States. In Buck v. Colbath, 3 Wall. 334, Buck was the United States marshal for the district of Minnesota. An attachment suit was commenced in the circuit court of the United States for that district. In executing the writ of attachment Buck seized certain chattels as being the property of the defendants in the attachment suit. The case went to a final judgment in favor of the attaching creditor. This judgment involved the order that the property so seized by the marshal, or the interest of the defendants therein, be sold, and the proceeds paid to the plaintiff in satisfaction of his debt. Pursuant to this judgment, the sale was so made and the proceeds so applied. Meanwhile, Colbath, a stranger to the attachment proceeding, sued Buck in an action of trespass in one of the state courts of Minnesota. He proved that the goods so seized belonged to himself, and that the possessory right was in him, and not in the defendants in the attachment suit. Judgment went in his favor. The record was thereupon taken to the supreme court of Minnesota, and that court affirmed the judgment. The cause then went by writ of error to the supreme court of the United States, and there the judgment of the supreme court of Minnesota was affirmed. It will be seen that Colbath, instead of suing in trespass, might have made his application to the circuit court of the United States pending the attachment proceedings. In that event, the question touching his ownership would have been before that court; but as the case went, notwithstanding the order of sale, the judgment of the national court did not involve any adjudication or finding upon the matter of ownership in Colbath.

In the case at bar the foreclosure decree did not involve any question as between Messick and the mortgagees, Kountz & Crosby, or between Messick and the Anderson, Lebanon & St. Louis Railroad Company. The railroad company, it is said, had entered on Messick's land, and marked off the way or route for the proposed road, and had

graded the same.   In this condition of the mortgaged property the foreclosure decree was rendered and sale thereunder made.   The purchaser, the Midland Railway Company, took whatever right, as against Messick, was then vested in the mortgagor.   But the decree did not necessarily involve the finding by the court that any right had so vested as against Messick.   There was in this decree no basis for any writ of assistance against Messick in case he had seen fit to interfere with the purchaser under the foreclosure decree with respect to that portion of his land which had been marked off and graded as already mentioned.   It is even questionable whether, by any necessary implication, it here appears that, at the time when the purchaser under the foreclosure succeeded to the railroad property, Messick could not have enjoined any further work on his land until he had received such compensation as he would have been entitled to under the law of eminent domain.

If in Buck v. Colbath the marshal had, after the final judgment and sale in the attachment suit, filed his bill in the circuit court of the United States to enjoin the proceeding in the state court, he would have failed.   The theory of such a bill by him would have been that the circuit court of the United States, in ordering the property which had been seized under the attachment writ to be sold, did, in effect, adjudge that the same belonged to the defendants in that suit, and that it was necessary for the court to entertain the bill in order to effectuate and enforce its own judgment; or that the trespass suit could not be entertained in the state court, since the defendant therein, in committing the alleged trespass, had acted under color of process from the national court.   But this view of that case is discredited in the supreme court opinion.   So, here, Messick was not a party, or in privity with any party, to the decree of foreclosure.   There is nothing in that decree which necessarily concludes him.   We are unable to see that the foreclosure proceeding of 1885 is available to appellant as vesting the circuit court of the United States with a jurisdiction prior in time to that of the state court, or as being, in effect, an adjudication on the question of right in the owner of the Messick land to eject the railroad company therefrom.

It is urged that since the railroad is now in operation across the land in controversy, and since it is a public highway for interstate commerce, and is also a national mail route, the case should be litigated in the circuit court of the United States.   If the United States, or the attorney general, were party complainant, this point might well be considered.   But the appellant here is a mere mortgagee.   It is a creditor with a mortgage, striving in its own right as creditor to prevent waste of, or injury to, the mortgaged property.   It is not the custodian of public rights.   It does not, nor is it authorized to, sue on behalf of the public.   This is not an information and bill by the attorney general and this appellant.

The point that appellant was not a party to, and is hence not bound by, the judgment in the state court, is doubtless well taken.   But the proposed ejectment of the railway company from the land in question is a matter within the jurisdiction of the state court.   That court has control over its own process.   The circuit court of the United

States cannot give the relief here prayed without interfering with the proceedings of the circuit court of Montgomery county, Ind. The national court ought not to so interfere, even if there were no such express statutory provision as section 720. The order of dismissal is affirmed.