LEATHE et al. v. THOMAS et al.

(Circuit Court of Appeals, Seventh Circuit. November 3, 1899.)

No. 597.

1. INJUNCTION—AGAINST EXECUTION OF STATE COURT.
    An order enjoining a sheriff from proceeding with the collection of an execution lawfully issued to him in pursuance of a decree is within the prohibition of Rev. St. § 720, against an injunction by a court of the United States to stay any proceeding in a state court.[1]

2. SAME—COMITY.
    Comity prevents a federal court from enjoining enforcement of an execution of a state court.

8. APPEAL—INJUNCTION.
    Though the court of appeals can grant injunctions in aid of its jurisdiction, it cannot, on appeal from an order dissolving an injunction against enforcement of an execution, modify the order so as to permit the sheriff to collect the money, and then restrain him from paying it over to the execution plaintiff, where no such order was asked, and the right thereto was not considered in the court below.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

This is an appeal from an order dissolving a temporary injunction. The bill of complaint upon which this order of injunction was granted was brought in the court below by the appellants against the appellee for an accounting and other equitable relief. It is only necessary to state such facts disclosed in the bill as are material to the determination of the questions arising out of the order of dissolution.

Edward L. Thomas, a person of limited means, had for two years or more prior to January 24, 1893, been engaged in constructing a railroad from the city of Belleville, Ill., to a point on the Mississippi river opposite the city of St. Louis, Mo. The money used had been, up to that time, mainly furnished by William A. Adams, who died in the fore part of 1893. The railroad was being built under the name of the Belleville & St. Louis Railway Company, organized under the laws of the state of Illinois governing the incorporation of railroad companies. Said Thomas also owned some stock in a coal company operating in St. Clair county, Ill., of which, at the time of his death, William A. Adams was the principal stockholder. At this time said Thomas

---

[1] Enjoining proceedings in state courts, see note to Garner v. Bank, 16 C. C. A. 90, and, supplementary thereto, note to Trust Co. v. Grantham, 27 C. C. A. 575.

was at the end of his resources, and, unless he could procure speedy and effective aid, he would lose all he had invested, and would be left burdened with a large amount of debt. The complainant Leathe was a man of large means. They were brought together by one Lucien M. Chipley, a promoter. Leathe having concluded to come to the rescue of said Thomas, they, in connection with Bart S. Adams and Lucien M. Chipley, on January 24, 1893, entered into a written agreement, the main provisions of which were that Leathe was to have 51 per cent. of the capital stock; that Leathe and Chipley were to furnish the funds to carry on the enterprise; that coal and other companies that might be formed to carry out the contemplated enterprise were to be carried on in the same proportions; that Leathe was to hold the bonds then issued by the existing company to the amount of $150,000, and to sell $500,000 of bonds to be issued; that from the proceeds of the bonds Leathe was first to be paid his investment, then Thomas and Adams were to receive the moneys advanced by them; that all sums coming to Thomas growing out of the enterprise were to be held by Leathe until all matters were fully adjusted and paid. Leathe faithfully carried out his part of the agreement. He built the railroad, the name of which was first changed to Belleville City Railway Company, then to St. Louis, Belleville & Southern Railway Company. He developed the coal enterprise, which was carried on in the name of the Crown Coal & Tow Company. In doing this he purchased large quantities of coal lands along the line of the railroad, and also steam tugs and barges for river service. Bonds were issued by the railway company to the amount of $500,000, and by the Crown Coal & Tow Company to the amount of $200,000. In November, 1895, Leathe sold his bonds, with most of the stock; Thomas at the same time transferring his stock to one Elbert H. Gary, agent for undisclosed principals, for the sum of $550,000, of which Leathe received $500,000 and Thomas $50,000, paid to them, respectively. As a part of this transaction, Leathe guarantied the purchaser against all claims that might exist against either of the companies. Under the agreement of January 24, 1893, it became the duty of Leathe to account with the parties to the contract, and it is the purpose of the bill to have such an accounting. It further appears from the bill that since the sale of the bonds many obstacles have been interposed which have prevented Leathe from making the accounting and settlement. These obstacles are chargeable to the other parties to the bill, who have involved Leathe in a multiplicity of suits, brought by single parties, in which it is impossible to settle and determine the respective rights of all the parties in interest. One of the obstacles in the way of the accounting sought by the bill is the disputed claim of Edward L. Thomas against the Crown Coal & Tow Company on which Thomas had brought suit in the St. Clair circuit court, and obtained a judgment for $6,309.89, upon which he has sued out an execution, which has been placed in the hands of the sheriff of St. Clair county, Ill., who is now about to enforce its collection. It is alleged that said Thomas filed his bill in the circuit court of St. Clair county, Ill., in 1896, against the Crown Coal & Tow Company, and that such proceedings were had that on January 4, 1897, the court adjudged and decreed that the Crown Coal & Tow Company should pay said Thomas the sum of $6,309.89, with interest, which decree is in full force, and which the said Thomas threatens to collect by execution, which he has caused to issue from the said court, and which is now in the hands of the sheriff for collection; that complainant Leathe is, under his contract with said Gary, compelled to hold harmless the Crown Coal & Tow Company against said judgment; and, unless prevented by the order of this court, said Leathe will be compelled to pay at once to said Thomas, or the said sheriff under the said execution, the money expressed by said judgment, with interest thereon. The complainants show that said sum of money so found due said Thomas arises from and grows out of the enterprise entered into by the parties by the agreement of January 24, 1893, and that the sum so found due is in law and in equity a part of the moneys to be held and retained by said Leathe until the final adjustment of the matters growing out of said agreement. Prayer: That the state of the accounts between the several parties be ascertained and decreed, and for a temporary injunction to restrain the enforcement of the judgment of Thomas against the Crown Coal & Tow Company. On the application of the complainants a temporary injunction was granted restraining "Herman Bar-

nickol, sheriff of St. Clair county, Illinois, from further proceeding with the collection of a certain execution in his hands, issued from the office of the clerk of the circuit court of St. Clair county, Illinois, on a decree rendered at the September term, 1896, to wit, on January 4, 1897, in favor of Edward L. Thomas against the Crown Coal & Tow Company, for the sum of $6,309.89, with interest from January 4, 1897, until the further order of the court." The defendants moved for a dissolution of this temporary injunction, and, on hearing had, the same was dissolved by the order of Judge Jenkins.

G. A. Koerner, for appellants.
Charles W. Thomas, for appellees.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

After stating the facts as above, the opinion of the court was delivered by BAKER, District Judge.

The restraining order, the dissolution of which is complained of, enjoined the sheriff from further proceeding with the collection of an execution lawfully issued to him in pursuance of a decree of the circuit court of St. Clair county, in the state of Illinois. It is suggested by counsel for appellees that under the authority of Haines v. Carpenter, 91 U. S. 254, the bill is multifarious and bad on demurrer, and that for this reason the restraining order ought to have been dissolved. We do not consider it necessary to pass upon the question suggested. The order dissolved falls directly within the prohibition of section 720, Rev. St. 1878. · This section provides:

"The writ of injunction shall not be granted by any court of the United States to stay any proceeding in any court of a state except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

It is contended that the restraining order does not stay any proceeding in the state court, and that its only purpose is to control the action of a ministerial officer. It is conceded that no court of the United States can lawfully issue any order of injunction to arrest the progress of a suit pending in any court of a state, but it is claimed that this is not a suit pending in the court of a state, inasmuch as the matter has passed into judgment, and that the issuance of the execution by the clerk, and the act of the sheriff in executing it, are to be performed under the mandate of the statute, and form no part of the proceedings of the court. This contention cannot be maintained. The prohibition of the statute does not extend to proceedings in a court of the state up to and including final judgment only, but to the entire proceedings from the commencement of the suit until the execution issued on the judgment or decree is satisfied. The supreme court, in Wayman v. Southard, 10 Wheat. 1, say:

"The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until the judgment shall be satisfied. Many questions arise on the process subsequent to the judgment in which jurisdiction is to be exercised. It is therefore no unreasonable extension of the words of the act to suppose an execution necessary for the exercise of jurisdiction. Were it even true that jurisdiction could technically be said to terminate with the judgment, an execution would be a writ necessary for the perfection of that which was previously done, and would consequently be necessary to the beneficial exercise of jurisdiction."

Jurisdiction is the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal that, if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree, and that jurisdiction continues until that judgment or decree is satisfied. A writ will lie by the party aggrieved to correct errors in the proceedings, judgment, or execution in a suit in a court of record. The statute of the state authorizing the issuance and execution of final process is not in denial, but is rather in affirmance, of the existence of the jurisdiction of the court until the judgment or decree is satisfied. Diggs v. Wolcott, 4 Cranch, 179; Peck v. Jenness, 7 How. 612, 625; Watson v. Jones, 13 Wall. 679, 719; Haines v. Carpenter, 91 U. S. 254; Dial v. Reynolds, 96 U. S. 340; Sargent v. Helton, 115 U. S. 348, 6 Sup. Ct. 78; In re Sawyer, 124 U. S. 200, 220, 8 Sup. Ct. 482; U. S. v. Collins, 4 Blatchf. 142, Fed. Cas. No. 14,834; Wayman v. Southard, supra; Bank v. Halstead, 10 Wheat. 51; Riggs v. Johnson Co., 6 Wall. 166; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019; Trust Co. v. Grantham, 27 C. C. A. 570, 83 Fed. 540, and 53 U. S. App. 647. The section above cited is not the only obstacle which prevents the sustaining of the order of injunction. The principle of comity which obtains between courts of concurrent jurisdiction forms a recognized part of their duty. It requires that a subject-matter drawn and remaining within the cognizance of a court of general jurisdiction shall not be drawn into controversy or litigated in another court of concurrent jurisdiction. This principle prevails in all courts of concurrent jurisdiction deriving their powers from a common source. "A departure from this rule would lead to the utmost confusion and to endless strife between courts deriving their powers from the same source; but how much more disastrous would be the consequence of such a course in the conflict of jurisdiction between courts whose powers are derived from entirely different sources?" Buck v. Colbath, 3 Wall. 334, 341. It is firmly established that the application of this principle forbids the courts of the states from interfering by injunction or otherwise with the mesne or final process of the courts of the United States; and the same principle in like manner forbids the courts of the United States from interfering by injunction or otherwise with the mesne or final process of the courts of the states. The court, speaking through the chief justice, in Moran v. Sturges, 154 U. S. 268, 14 Sup. Ct. 1022, quotes the following from Mr. Justice Clifford, who spoke for the court in Riggs v. Johnson Co., 6 Wall. 195:

"State courts are exempt from all interference by the federal tribunals, but they are destitute of all power to restrain either the process or proceedings of the national courts. Circuit courts and state courts act separably and independently of each other, and in their respective spheres of action the process issued by the one is as far beyond the reach of the other as if the line of division between them was traced by landmarks and monuments visible to the eye."

For these reasons, without reference to the prohibition of section 720, we should be constrained to affirm the order of dissolution.

It is, however, insisted if the court should be of opinion that the

restraining order cannot be sustained as granted, that this court should modify the order so as to permit the sheriff to collect the judgment, and then restrain him from paying it over to the execution plaintiff. It is enough to say that no such order was asked for either in the prayer for relief or in the application for a temporary injunction, nor was the right to such an order considered in the court below. This court can grant injunctions in aid of its jurisdiction, but the modification asked is tantamount to the granting of an injunction de novo in the suit pending in the court below, and is in no wise in aid of the jurisdiction of this court. Whether the court below should grant a temporary restraining order, enjoining the sheriff from paying over the money, when collected, to the execution plaintiff, and also enjoining the latter from receiving it, are questions not before us, and we express no opinion upon them. The order appealed from is affirmed at the costs of the appellants.