## MUTUAL RESERVE FUND LIFE ASS'N v. PHELPS et al.

(Circuit Court, D. Kentucky. August 25, 1900.)

1. MUTUAL INSURANCE—MORTUARY FUND—GARNISHMENT.
   The credits due or to become due a mutual insurance company upon mortuary calls and premiums from persons insured in the association, being a trust fund for the payment of the losses of contributors to it, cannot be diverted by garnishment or an order of court to the payment of the judgment of a mere creditor, who is not a member of the association.

2. FEDERAL COURT—INJUNCTION—PROCEEDINGS IN STATE COURT—VALIDITY—RECEIVERS.
   More than 60 days after judgment in an action against plaintiff in a state court, the plaintiff therein filed a supplemental petition to obtain satisfaction of the judgment by subjecting the mortuary calls and premiums thereafter to become due the defendant association; and thereupon the state court on the same day, although no notice of the petition had been served upon the association, transferred the cause to the equity docket, and appointed a receiver for the association in that state, and directed it to collect all the income and revenues of the association from its policy holders. Held, that the proceedings under the supplemental petition were void, and did not constitute a proceeding pending in the state

court, within Rev. St. U. S. § 720, which forbids the issue of an injunction by a federal court against proceedings in a state court.

8. SAME.

The order appointing the receiver in the supplementary proceedings in the state court being a nullity, the receiver is not an officer of the state court, and therefore the receiver and the plaintiff in the state court may be enjoined in a federal court from receiving the mortuary assessments and premiums due the plaintiff herein.

4. SAME—IRREPARABLE INJURY—MULTIPLICITY OF SUITS.

The holders of complainant's certificates being numerous, a mortuary call being due in a few days, and its payment to any other person than the association being likely to result in the lapse of many certificates and in irreparable injury to many members, besides doing serious injury to the business of the association, and causing a multiplicity of suits, and the mortuary calls being, moreover, not subject to any form of garnishment, the plaintiff is without any adequate remedy at law, and is entitled to an injunction restraining the judgment creditor and the receiver appointed by the state court from seeking to reduce the income and revenues of complainant to possession for the satisfaction of said judgment.

George Burnham, Jr., S. T. Tyng, and Pirtle & Trabue, for complainant.

Zack Phelps and R. F. Washer, for defendants.

EVANS, District Judge. On the 14th day of July, 1885, James S. Phelps procured a certificate of membership (otherwise a policy of life insurance) in the complainant association, and at stated periods thereafter paid the dues and the mortuary calls or premiums thereon as stipulated in the certificate. This continued until about January, 1900, a period of nearly $14\frac{1}{2}$ years, and for that length of time he continuously paid the premiums for carrying the risk. Pursuant to the stipulations of the certificate or policy, as the insurer claimed, the mortuary calls were increased to a higher rate, and probably fixed upon a different plan than the insured thought was permitted by the terms of the certificate; and after the date last named he refused to pay the increased rates, and on the 28th day of February, 1900, instituted an ordinary action at law in the state court to recover the entire amount of the calls or premiums so paid by him, together with interest thereon. Upon a service of process, which the state court considered valid and sufficient, judgment in that action was rendered in the plaintiff's favor on May 19, 1900, for the entire claim then ascertained by the court to be the sum of $2,360, for which amount, with interest from that date, and the costs of the proceeding, judgment was then rendered against the association. It will be seen that this judgment allowed to the insurer no compensation whatever for the risk it had taken and carried for the $14\frac{1}{2}$ years, during which the certificate or policy had been in force, and the premiums and calls had been paid. On the 21st day of May, 1900, an execution of fieri facias was issued upon the judgment, and was placed in the hands of the sheriff of the proper county, who subsequently, namely, on June 12, 1900, returned the writ, in substance, "No property found." More than 60 days after the judgment, to wit, on the 4th day of August, 1900, the plaintiff in that action filed therein an amended and supplemental petition seeking to obtain satisfaction of the judgment by subjecting the assets and credits of

the insurer in Kentucky, and which consisted of the mortuary calls and premiums afterwards to become due from other insurers upon like certificates or policies; and upon considering this last paper the state court, although no process had been issued upon it, nor any notice of it given to the association, on the same day of its being filed transferred it to the equity docket, acted upon it, and appointed the Fidelity Trust & Safety-Vault Company receiver for the complainant in Kentucky, and directed it to collect all the revenues and income from the members or policy holders, and also ordered them, under threat of contempt, to pay the same as they accrued to the said receiver, although none of them were parties to the action, nor had any of them been summoned to answer as garnishees. After unsuccessfully attempting to file a petition for the removal of that action to this court on the 22d day of August, 1900, and after an equally unsuccessful attempt to have the bond tendered therewith approved by that court as sufficient, the complainant began this action, seeking to enjoin the efforts of the defendants Phelps and the Fidelity Trust & Safety-Vault Company to reduce any of complainant's revenues or income to their possession, upon grounds set forth in the bill of complainant,—that the last steps taken in the state court were void; that its policy holders were very numerous, and a great multiplicity of actions would otherwise result. Whether the judgment in the state court action was valid, as being based upon a sufficient service of process, we need not inquire at this stage of the proceeding. As the defendants are estopped from denying its validity, we shall assume it to be valid, for the purpose of the inquiry before us, only remarking that in the late case of Swann v. Association (C. C.) 100 Fed. 922, we had occasion to pass upon a somewhat kindred question, though not in that case inquiring into the nature of the agency of a "local treasurer," such as Mr. Frese appears possibly to have been in this case. That may become an important question in the future progress of this case, when the character of his agency, if any, is fully disclosed, but it is not so at present.

Whether the fund raised by the complainant from mortuary calls and premiums through its manner of insuring is a trust fund for all its members and beneficiaries, which cannot be diverted to the benefit of a mere creditor, who is not now a member, and for that reason possibly not entitled to participate as such, he not having contributed to the joint fund to be raised upon future mortuary calls, is an important question, though it need not now receive more than an incidental consideration. Ordinarily we might say that such a fund could not be subjected to a creditor's demand in a case like the one in the state court, and by process which, if anything, is substantially that of garnishment. In this case, where the mortuary calls, as shown by defendant Phelps in his pleading in the state court, are a trust fund to pay the losses of the contributors to it, the matter seems even clearer. Whether a premium or a mortuary call yet to be paid for life insurance, where the policy can only be kept alive by its payment, is a subject of any species of garnishment by creditors, in the hands of the policy holder, is another question which may become of much moment. Ordinarily we would certainly say that it was not a

debt due to the insurer at all, nor an asset belonging to it, until it was actually paid. The relation of insurer and insured admits of the construction only that the insured may purchase the-insurance for a prescribed period by voluntarily and at his option paying the premium. This and the plan of insurance offered by the complainant may be slightly-different, but, if the mortuary calls are not paid, the certificate of membership must in all cases lapse. So that, if the policy lapse, the insured has got nothing for his money. He has only paid a portion of a debt of the insurer, if what he is about to pay for the purchase of insurance for the future is taken from him for another and different purpose. It may be assumed to be at least extremely doubtful whether premiums or mortuary calls, not being in any sense debts, but only a cash payment for the purchase, at the option of the insured, of some future benefit, can in any sense be garnishable. If they can, the policy holder will lose, and the insurance company gain. The policies and all accumulations, if any, may be forfeited for nonpayment to the company, and the money, instead of paying for insurance, may be most unjustly diverted to the payment of the insurance company's debt. Justice to the policy holders, and every consideration, therefore, would seem to enforce the conclusion that the accruing premiums or calls cannot be garnished by any mere creditor of the company.

Section 720 of the Revised Statutes of the United States forbids the issuing by this court of any injunction against any proceedings in a state court, except in bankruptcy matters. This necessarily means a pending, and not a past or terminated, suit. The statute is a wise one, as nothing could be more incongruous and unseemly than for the courts of the United States to attempt to control by their processes the ordinary actions of the state courts. Of course, this does not mean that if this court first acquired jurisdiction of a subject-matter, or if a case had been lawfully removed here, in some instances, in support of its own jurisdiction, the parties thereto might not be directly operated upon by the court; but the statute otherwise plainly forbids this court to enjoin a proceeding in the state court, and this rule is extended to the officers of that court, as an inherent part of it. And this court will not enjoin a proceeding of the state court in this instance if one is there pending. It is, therefore, of the utmost importance to ascertain whether, since the final judgment in the ordinary action at law was rendered, on May 19, 1900, there has been any pending proceeding in the state court, within the meaning of the law, or whether there is any proceeding now pending there, within the meaning of that statute. If the defendants are mere wrongdoers, and if their threatened actions are injurious to the complainant, different results may follow. Assuming it to be valid, the court is clearly of opinion that, from and after the rendition of that judgment on that date, that action was functus officio for all purposes of pleading. Its force was spent, and all steps attempted to be taken thereafter, except in way of writs for the execution of the judgment, were coram non judice and void. Brown v. Vancleave, 86 Ky. 381, 6 S. W. 25; Meadows v. Goff, 90 Ky. 540, 14 S. W. 535. Pursuant to these authorities, and many oth-

ers to the same effect which might be cited, the filing of the supplemental petition, and the action of the court appointing a receiver thereupon, will be treated as mere nullities. Into a suit at law that was already terminated by final judgment, and which was therefore off the docket, a supplemental pleading was sought to be injected, seeking its enforcement by merely equitable proceedings. No summons was issued upon it. No notice of it was given to the party most interested in it, and it was acted upon and disposed of by the court immediately. No attachment was issued under which property was seized or garnishees summoned as a foundation of possible jurisdiction of a res, and, in short, the whole so-called supplemental proceeding was an attempt to graft a live branch upon a dead stock. This must be a futile effort. A transfer to the equity docket of what was of no legal validity did not aid or strengthen it. The attempted proceeding was not authorized by any of the provisions of the Civil Code regulating attachments. Those provisions obviously apply to cases altogether different from this. Especially does not section 227 apply. It provides for the case of a garnishee actually summoned as such in the action, whose answer is not satisfactory. In that event a supplemental petition may be filed in the original case, which, indeed, as to him, has never been terminated by final judgment. Here there is nothing in the slightest degree resembling that, as no attachment was issued nor garnishees summoned. Nor do sections 298 and 299 of the Civil Code (Ed. 1899) authorize the appointment of a receiver in such a case, and certainly not in such a manner.

Assuming for the purposes of this motion only that the judgment of May, 1900, was valid, and regarding the action in the state court as having terminated at the time of its rendition, and as thereafter only providing support to writs for the collection of the judgment, or for a separate suit in equity, under section 439 of the Code, the petition for the removal came too late, though whether the necessary jurisdictional amount is involved may present at some time an interesting question. The judgment was for $2,360, and interest thereon from its date, and for costs. Whether the more than $360 of interest manifestly included in the $2,360 then merged into and became part of the principal, in the sense of the removal acts, may yet demand attention. At present, however, it seems immaterial. The orders appointing the Fidelity Trust & Safety-Vault Company receiver being simply nullities, that company is not an officer of the state court, and enjoining it in no way enjoins a proceeding in the state tribunal. This being so, the facts stated in the bill of complaint seem to present sufficient grounds for the temporary injunction prayed for against the defendant, the Fidelity Trust & Safety-Vault Company, and also against the defendant Phelps, except that he should be left at full liberty to collect his judgment by all lawful means, other than by subjecting thereto the mortuary calls, assessments, premiums, and dues accruing upon the certificates or policies of members of the complainant association, to which, as we have seen, he has as yet manifested no right. This court could not enjoin the execution of any of the writs for enforcing the judgment, and it

might be the same if the insured in this case had, before complainant's bill was filed, brought an action in equity, under section 439 of the Civil Code, to enforce his judgment. The Kentucky Code of Practice (section 5) prescribes two separate kinds of actions. One of these is an ordinary action at law; the other, an equitable action. In Davidson v. Simmons, 11 Bush, 333, the court of appeals of Kentucky held, that the action in equity provided for in that section (then section 474) was the only action allowed by the laws of Kentucky to enforce a judgment at law. That remedy by suit is exclusive. The amended and supplemental petition in the state court in this instance, even though transferred from the law docket to the equity docket, was in no sense a suit in equity; nor, for the reasons already given, can it be regarded as a legal proceeding at all. It can only be considered as a vain thing. Of course, the state might have authorized such steps as those last taken in its court, but it has not done so in its Code of Practice or otherwise, as the cited authorities demonstrate. The holders of certificates in the complainant association in Kentucky appear to be numerous, and a mortuary call has been made, which is due in a few days. Their payment to any person except the association may result in the lapse of many certificates, and in irreparable injury to many members, unless they pay both to the receiver and to the association. Much confusion is inevitable. A multiplicity of suits seems unavoidable, and the business of the complainant may be most seriously affected by what we have seen are wholly unmaintainable proceedings. Besides, it has the right to protect that trust fund. We have also seen that those mortuary calls cannot properly be the subject of any form of garnishment. Manifestly, there is no adequate remedy at law for this state of things, and an injunction pendente lite is granted, as prayed in the bill, with the modification indicated as to defendant Phelps.