KE–SUN OIL CO. et al. v. HAMILTON et al.*

No. 6753.

Circuit Court of Appeals, Ninth Circuit.

Sept. 26, 1932.

Donald Campbell, of Great Falls, Mont., and Louis P. Donovan, of Shelby, Mont., for appellants.

George E. Hurd, of Great Falls, Mont., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The General American Tank Car Corporation brought an action against the Sunburst Oil & Refining Company for the appointment of a receiver for the management of the affairs of the latter corporation. It alleged that the Sunburst Oil & Refining Company, which we will hereinafter refer to as the "oil company," is indebted to it upon an unsecured claim for $76,517.62 for rent of its tank cars. It alleged that the oil company owns and operates an oil refinery at Great Falls, Mont.; that it owns large interests in oil and gas lands, leases, royalties, and oil well drilling equipment, tools, appliances, and a large stock of refined gasoline, fuel oil, road oil, and other petroleum products largely stored at the refinery; that it is the owner of ac-

*Rehearing denied November 14, 1932.

counts receivable; that the oil company's property is worth approximately $1,726,000; that it has issued stock of the par value of $2,230,605; that its outstanding indebtedness is approximately $811,000; that of this amount $280,000 is secured by a mortgage, and $100,000 represents the taxes due to the United States, to the state of Montana, and diverse counties; that $75,000 of the indebtedness represents judgments against the defendant; that a proceeding for the foreclosure of a mortgage of $150,000 with $14,000 interest due the Rio Grande Oil Company has been instituted; and that this mortgage is upon lands and interests in lands in Toole county, Mont. The plaintiff alleged that actions had been brought in the District Court for the Ninth Judicial District of Montana against the oil company, and that in these cases judgments have been obtained. Two of these judgments were in favor of the Ke-Sun Oil Company, one for $397.48, one for $511.01 (the evidence shows a third one for $385.23 in favor of that company). The judgment in favor of H. G. Syster is alleged to be for $958.92. In other actions attachments have been levied upon the property of the oil company, one by G. E. Wilson to recover $1,670.50; another by Warren Leslie Galbraith for $125; another by E. E. Gibson for $374.40 (it subsequently appears that the amount was $748.80); that E. L. Bell, trustee, has recovered a judgment against the oil company for $64,679.08; that the American National Bank has secured a judgment for $4,518.58; and that Herbert H. Williams has secured a judgment for $1,422.50. The evidence shows that attachments were levied in the said actions for $125, $748.80, $64,679.08, $4,518.58, and for $1,422.50. Upon the filing of the complaint, the oil company forthwith filed an answer November 9, 1931, consenting to the appointment of a receiver as prayed for in the bill. Thereupon, upon the same day, a receiver was appointed and empowered to take charge of all the property of the oil company, and to institute, prosecute, and defend all pending and other necessary litigation. The order appointing the receiver enjoined all creditors, stockholders, and other persons "from levying any attachments, executions, or other processes upon or against any of the properties of the defendant, or from taking or attempting to take into their possession, the property or any part of the property of the defendant."

Thereafter, on November 23, 1931, the receiver petitioned the court for an injunction prohibiting litigants who had obtained judgments or attachments upon the property of the oil company from enforcing those judgments or attachments by execution or sale and requiring them to relinquish the aforesaid attachments and levies of execution. The petition of the receiver named the sheriff of Cascade county, Mont., and the sheriff of Toole county, Mont., as respondents, and also set out a list of claims of various creditors upon which actions had been prosecuted to judgment and executions issued and levied, or were about to be issued and levied against the property of the defendant, and actions in which attachments had been levied, including, among others, those hereinbefore mentioned. Included in these claims are those of the appellants. As to the claims of appellant Ke-Sun Oil Company, execution had been levied and sales thereunder had been set for December 4 on two judgments, one for $397.48, the other for $511.01. The same was true in regard to the appellant H. G. Syster for $958.92. The third claim of the Ke-Sun Oil Company for $385.23 had been reduced to judgment August 26, 1931, and an attachment had been levied on that date, but no execution had been levied. Appellant Tenbroeck had a judgment for $290.65 upon which execution had been levied October 17, 1931. Appellant Galbraith had an attachment levied October 9, 1931, for $125, and E. E. Gibson had one for $748.80 levied October 9, 1931. John Krutzfeld had an attachment for $80 levied November 2, 1931. The receiver alleged that the issuance and levy of such attachments and executions on money and property belonging to the oil company had prevented him from taking possession of such property as required by the order of the court, and that, by reason of the levy of such attachments, persons owing money to the oil company had been prevented from paying the same to the receiver, and that, by reason of the issuance and levy of such attachments, the receiver will be embarrassed in the orderly administration of his trust, and unable to proceed with the order of the court appointing him receiver. He called attention to the impending execution sales advertised for December 4, 1931; the petitioner alleged that he is informed and believes that creditors, whose attachments and executions were levied prior to November 9, 1931, are entitled to liens upon the property so levied upon and to a preference in payment of their claims to the extent of such liens, but averred that an orderly administration of his trust requires that all moneys and properties so levied upon be reduced to the petitioner's possession and such liens and preferences be taken care of in the course of his administration. An order to show cause

and subpœna were issued upon such petition, and appellants appeared in reply and moved to dismiss the petition upon the ground that the court had no jurisdiction to grant a writ of injunction to stay the proceedings in the state court in which they were parties upon attachments and executions levied before the appointment of the receiver, and that the court had no jurisdiction to remove from the custody of the state courts property levied upon and seized by the appellant O. D. Clark, as sheriff of Toole county, Mont., upon writs of attachment and of execution levied before the appointment of a receiver, and that the petition does not state facts sufficient to entitle petitioner to the relief demanded, or to any relief. The court made a preliminary order restraining the sheriff's sale for a period of sixty days, and thereafter filed a memorandum decision and made an order enjoining the respondent creditors and officers from selling or disposing of any of the property or money of the Sunburst Oil & Refining Company levied upon by them, and that all writs of execution, of attachment, or of any other character, levied upon any of the property of the oil company, "including moneys held under garnishment process, or otherwise, be and the same are hereby released from such attachment, execution, garnishment process or other writ." The respondent sheriffs were directed to forthwith release the same, and the respondents were required to surrender and deliver to the receiver all the property of the Sunburst Oil & Refining Company "so subjected by said defendants, or any of them, to writs of attachment, execution, garnishment process or other writ." It was further ordered that the liens lawfully acquired by the defendants against the property should be protected by the receiver in accordance with the priority to which they are entitled, and that the receiver shall present the same to the court for due administration and adjudication as to their priorities, and the receiver "shall so operate the properties herein involved, so surrendered to him, in such manner as not to affect such liens or any thereof unless otherwise ordered by this court." It appears from the statement that no evidence was introduced in the court below, and that the matter was determined upon the petition and motion to dismiss.

It will be observed that in the petition and order no distinction was made between attachments of personal property of which possession had been taken by the sheriff, attachments of personal property by garnishments, and the attachment of real property by writ of attachment or writ of execution.

In support of this order the appellees rely strongly upon the decision of this court in the case of Pacific Coast Pipe Co. v. Conrad City Water Co., 245 F. 846, wherein Judge Dietrich, speaking for the court, held that the levy of an execution or writ of attachment on land in the state of Montana did not place the real estate in the custody of the federal court issuing the attachment or execution so as to preclude the sale thereof by a receiver of the property subsequently appointed by the state court. In that case the situation of the federal and state courts was the exact reverse of that in the case at bar. There the state court had appointed a receiver after a writ of attachment issuing out of the federal court had been levied on the property. The state court enjoined the litigant in the federal court from proceeding with his attachment and execution. The United States District Court from which the writs of attachment had been issued was asked to ignore the receivership and to proceed with the sale of the property. This the trial court (237 F. 673) refused to do, and was sustained therein by this court. The reasoning of that case is applicable to the case at bar in so far as it relates to real estate. It is not, however, applicable in so far as it relates to personal property which had been seized by the sheriff, for the reason that the decision is based upon the fact that under the law of Montana the sheriff, who levies an attachment or execution on real estate, does not take actual possession of the property. The opinion of the trial judge in the case at bar shows that he not only relied upon that decision by this court, but felt thereby impelled to render the decision from which this appeal is taken. There is no doubt that the reasoning of our decision in Pacific Coast Pipe Co. v. Conrad City Water Co., supra, justifies the conclusion of the trial judge in so far as it is based upon the power of jurisdiction of a court of equity to restrain the enforcement of an attachment or execution levied upon real estate where there is no actual possession of the property taken by the sheriff, and actual possession thereof has been taken by the receiver. This decision, however, is not in harmony with the decisions of other Circuit Courts of Appeals which have definitely held that the court appointing a receiver has no authority to enjoin enforcement of attachment and execution liens upon the property which had been perfected before the appointment of a receiver. Bortman v. Urban Motion Picture Industries (C. C. A.) 4 F.(2d) 913; Leathe v. Thomas (C. C. A.) 97 F. 136. See, also, Lehman v. Spurway (C. C. A.) 58 F.(2d) 227; Ackerman v. Tobin

(C. C. A.) 22 F.(2d) 541. These decisions are based upon the theory that such an injunction would be a violation of 28 USCA § 379 (section 265, Jud. Code, 36 Stat. 1162, c. 231, section 720, Rev. Stat.), which prohibits a federal court from enjoining proceedings in the state courts. See 1 Stat. 334, § 5, c. 22, March 2, 1793; Hull v. Burr, 234 U. S. 712, 723, 34 S. Ct. 892, 58 L. Ed. 1557, and Simon v. Southern Ry., 236 U. S. 115, 123, 35 S. Ct. 255, 59 L. Ed. 492, giving history of legislation on this subject.

In the case of Leathe v. Thomas (C. C. A.) 97 F. 136, 138, it is contended that the restraining order which was first issued by the trial court and then dissolved did "not stay any proceeding in the state court, and that its only purpose is to control the action of a ministerial officer." The court said: "It is conceded that no court of the United States can lawfully issue any order of injunction to arrest the progress of a suit pending in any court of a state, but it is claimed that this is not a suit pending in the court of a state, inasmuch as the matter has passed into judgment, and that the issuance of the execution by the clerk, and the act of the sheriff in executing it, are to be performed under the mandate of the statute, and form no part of the proceedings of the court. This contention cannot be maintained. The prohibition of the statute does not extend to proceedings in a court of the state up to and including final judgment only, but to the entire proceeding from the commencement of the suit until the execution issued on the judgment or decree is satisfied."

After quoting from the decision of the Supreme Court in Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253, the opinion proceeds as follows:

"Jurisdiction is the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal that, if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree, and that jurisdiction continues until that judgment or decree is satisfied. A writ will lie by the party aggrieved to correct errors in the proceedings, judgment, or execution in a suit in a court of record. The statute of the state authorizing the issuance and execution of final process is not in denial, but is rather in affirmance, of the existence of the jurisdiction of the court until the judgment or decree is satisfied. Diggs v. Wolcott, 4 Cranch, 179 [2 L. Ed. 587]; Peck v. Jenness, 7 How. 612,

625 [12 L. Ed. 841]; Watson v. Jones, 13 Wall. 679, 719 [20 L. Ed. 666]; Haines v. Carpenter, 91 U. S. 254 [23 L. Ed. 345]; Dial v. Reynolds, 96 U. S. 340 [24 L. Ed. 644]; Sargent v. Helton, 115 U. S. 348, 6 S. Ct. 78 [29 L. Ed. 412]; In re Sawyer, 124 U. S. 200, 220, 8 S. Ct. 482 [31 L. Ed. 402]; U. S. v. Collins, 4 Blatchf. 142, Fed. Cas. No. 14,834; Wayman v. Southard, supra; Bank v. Halstead, 10 Wheat. 51 [6 L. Ed. 264]; Riggs v. Johnson County, 6 Wall. 166 [18 L. Ed. 768]; Moran v. Sturges, 154 U. S. 256, 14 S. Ct. 1019 [38 L. Ed. 981]; Trust Co. v. Grantham, 27 C. C. A. 570, 83 F. 540. * * *

"It is firmly established that the application of this principle forbids the courts of the states from interfering by injunction or otherwise with the mesne or final process of the courts of the United States; and the same principle in like manner forbids the courts of the United States from interfering by injunction or otherwise with the mesne or final process of the courts of the states. The court, speaking through the chief justice, in Moran v. Sturges, 154 U. S. 268, 14 S. Ct. 1019, 1022 [38 L. Ed. 981], quotes the following from Mr. Justice Clifford, who spoke for the court in Riggs v. Johnson County, 6 Wall. 195 [18 L. Ed. 768]: 'State courts are exempt from all interference by the federal tribunals, but they are destitute of all power to restrain either the process or proceedings of the national courts. Circuit courts and state courts act separately and independently of each other, and in their respective spheres of action the process issued by the one is as far beyond the reach of the other as if the line of division between them was traced by landmarks and monuments visible to the eye."

In Mutual Reserve Fund Life Ass'n v. Phelps, 190 U. S. 147, 23 S. Ct. 707, 710, 47 L. Ed. 987, the Supreme Court sustained the decision of the Circuit Court of Appeals for the Sixth Circuit (112 F. 453, 61 L. R. A. 717) reversing the United States Circuit Court (103 F. 515) which had refused to dissolve an injunction against further prosecution of supplementary proceedings in the state courts ancillary to a judgment therein upon which an execution had been returned nulla bona. The court said: "Being a mere continuation of the action at law, and not removable to the Federal court, the latter had no jurisdiction to enjoin the proceedings under it."

In the decision of the Circuit Court of Appeals of the Sixth Circuit (112 F. 453, 458, 61 L. R. A. 717), which was affirmed by the Supreme Court in the case last cited, it

was held that the power of the state court was not exhausted by the rendition of the judgment, and that an injunction against the proceedings to enforce the judgment was therefore erroneous. We quote therefrom in that regard as follows: "We are unable to agree with the opinion of the court below that the jurisdiction of the state circuit court was exhausted by the rendition of its judgment. The power to render that judgment included the power to issue all proper process to enforce its payment. The jurisdiction of the court over the controversy and over the parties, acquired in the primary case by service of process, continued until its judgment should be satisfied. This is a well-settled rule in respect to the jurisdiction of courts of record. Wayman v. Southard, 10 Wheat. 1, 22, 6 L. Ed. 253; Riggs v. Johnson County, 6 Wall. 166, 187, 197, 18 L. Ed. 768; Covell v. Heyman, 111 U. S. 176, 183, 4 S. Ct. 355, 28 L. Ed. 390; [Rio Grande] Railroad Co. v. Gomila, 132 U. S. 478, 483, 10 S. Ct. 155, 33 L. Ed. 400."

It is true that the federal courts are not prohibited by 28 USCA § 379, supra, from enjoining the collection of a judgment obtained by fraud, or, as stated by the Supreme Court in Wells Fargo & Co. v. Taylor, 254 U. S. 175, 183, 41 S. Ct. 93, 96, 65 L. Ed. 205: " * * * Or prevent them from depriving a party, by means of an injunction, of the benefit of a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience" —citing Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Ex parte Simon, 208 U. S. 144, 28 S. Ct. 238, 52 L. Ed. 429; Simon v. Southern Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; Public Service Co. v. Corboy, 250 U. S. 153, 160, 39 S. Ct. 440, 63 L. Ed. 905; National Surety Co. v. State Bank of Humboldt, Neb. (C. C. A.) 120 F. 593, 61 L. R. A. 394.

The Supreme Court of the United States in Riehle v. Margolies, 279 U. S. 218, 49 S. Ct. 310, 312, 73 L. Ed. 669, held that the appointment by the federal court of a receiver upon a creditor's bill in what is called a friendly receivership proceeding gave the trial court no right to stay a suit against the debtor then pending in a state court. Judge Brandies, speaking for the court upon the subject of the friendly receivership and its relation to the proceeding in the state court, said: "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit, Rouse v. Letcher, 156 U. S. 47, 49, 50, 15 S. Ct. 266, 39 L. Ed. 341; or by ancillary proceedings, White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67. Compare Kelley v. Gill, 245 U. S. 116, 119, 38 S. Ct. 38, 62 L. Ed. 185. And it may, despite section 265 of the Judicial Code (28 USCA § 379), issue under section 262 (28 USCA § 377), or otherwise, all writs necessary to protect from interference all property in its possession. Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629. But the appointment of the receiver does not necessarily draw to the federal court the exclusive right to determine all questions or rights of action affecting the debtor's estate. Calhoun v. Lanaux, 127 U. S. 634, 637–639, 8 S. Ct. 1345, 32 L. Ed. 297. This is true, a fortiori, as to the subject-matter of a suit pending in a state court when the receivership suit was begun. Compare Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345. The rule that, when the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it have once attached the right cannot be restrained by proceedings in any other court, applies to protect the jurisdiction of the court unless the case is within some recognized exception to section 265 of the Judicial Code. Compare Hull v. Burr, 234 U. S. 712, 723, 34 S. Ct. 892, 58 L. Ed. 1557; Wells Fargo & Co. v. Taylor, 254 U. S. 175, 182–184, 41 S. Ct. 93, 65 L. Ed. 205; Essanay Film Co. v. Kane, 258 U. S. 358, 361, 42 S. Ct. 318, 66 L. Ed. 658; Atchison, Topeka & Santa Fe Ry. Co. v. Wells, 265 U. S. 101, 103, 44 S. Ct. 469, 68 L. Ed. 928."

It will be observed that in the case at bar the receiver petitioned the court to aid him in securing the possession of property of which he had been required to take possession but had been prevented by the attachments and executions referred to. The receiver alleges: "That by the issuance and levy of such attachments and executions upon money and property belonging to said Sunburst Oil & Refining Company, your petitioner has been and is prevented from taking possession of such property as required by the order of this court as aforesaid."

The order in effect gave the possession of the property to the receiver. We are not, therefore, required to consider a situation where the receiver had actually taken possession of property upon which attachment or execution had been theretofore levied by the

state court, as was the case in Pacific Coast Pipe Co. v. Conrad City Water Co., supra. See also, Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871.

The order of the trial court is reversed, and the receiver is directed to restore to the sheriffs such property as he has received from them under and in pursuance of the order of the court.