GUARANTY TRUST CO. OF NEW YORK v. NORTH CHICAGO ST. R. CO.

KOHN et al. v. NORTH CHICAGO ST. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   April 16, 1904.)

No. 1,037

1. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—ENJOINING SUIT IN STATE COURT.

The pendency in a federal court of a creditors' suit against a street railroad company, for which a receiver has been appointed, but whose road is being operated under a 99-year lease, by a receiver of the lessee appointed by the same court in another creditors' suit against such lessee, does not exclude the jurisdiction of a state court to entertain a suit by stockholders to enjoin the delivery of an amended lease which has been agreed to by the company's directors, extending the term for a long period at a greatly reduced rental, and releasing stocks deposited in trust by the lessee to secure its performance, on the ground that such extension is ultra vires, and was obtained by the lessee by secretly and fraudulently securing control of the board of directors, and also to enjoin the lessee from voting certain stock for the ratification of such lease, since such suit does not interfere with the possession of the property by the federal court, nor with the receivers in its management, nor affect any issue which can be adjudicated under the pleadings in the creditors' suit; and the federal court is without jurisdiction to enjoin the prosecution of such suit on petition filed in the creditors' suit by the company defendant.

2. CREDITORS' SUITS—ADMINISTRATION OF PROPERTY—POWERS OF COURT.

While a court which has obtained possession of street railroad property through receivers appointed in separate creditors' suits against the lessor and lessee of such property has power to settle differences between the lessor and lessee when arising in the administration of the two estates, it has no power to compel the lessor to execute a new lease extending the term from 99 to 984 years, and materially reducing the rental during such long term; its custody of the property being temporary only, for the purpose of conserving it, if not sold, until creditors are paid.

3. FEDERAL COURTS—STAYING SUIT IN STATE COURT.

The fact that a bill filed in a state court incidentally prays for relief which, if granted, might interfere with the constructive possession of property by receivers of a federal court, does not authorize the latter court to enjoin the prosecution of the suit, where the principal relief sought therein does not trench upon its jurisdiction.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Prior to June 1, 1899, the North Chicago Street Railroad Company and the West Chicago Street Railroad Company (herein called, respectively, the North Chicago Company and the West Chicago Company) operated independent systems of surface street railroads on the North and West Sides, respectively, of the city of Chicago.   On June 1, 1899, each of those companies executed a lease to the Chicago Union Traction Company (herein called the Union Traction Company) demising its property and franchises to that company for the full period of the charter of the respective lessors, and all extensions or renewals thereof.   By the terms of these leases the Union Traction Company agreed to pay or renew all notes, bonds, and mortgages of the lessor companies, and to pay as rental to the lessors, respectively, amounts equivalent to annual dividends of 12 per cent. on the stock of the North Chicago Company, and of 6 per cent. on the stock of the West Chicago Company; such payments to be made quarterly.   The lease further provided that, for the purpose of securing the

¶ 1. Enjoining proceedings in state court, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Granthum. 27 C. C. A. 575.

130 F.—51

performance of the obligations of the lease, the Traction Company should deposit with the Illinois Trust & Savings Bank of Chicago, as trustee, such amount of cash or security as should be agreed upon by the parties, which fund should be held subject to the conditions of a tripartite agreement of even date between the three parties, by which agreement the sum of $10,000,000 in cash, or in securities of a kind and amount to be approved by the two railroad companies, was provided to be deposited; the income of the fund to be paid to the Traction Company until default in some one obligation of the lease, and upon default the income from the deposit, and so much of the principal as may be necessary, to be appropriated and applied in equal and ratable payment and discharge of the debts and obligations assumed by the Traction Company. In the event that stocks of corporations should constitute part of the deposit, the trustee should vote the same in accordance with the directions of the Traction Company, and, upon request, execute a proxy to vote such stock to such person as should be designated from time to time by the Traction Company. Under that agreement there were deposited 20,000 shares of the capital stock of the North Chicago Company and 32,000 shares of the capital stock of the West Chicago Company, which shares are now held by the trustee for the purposes of the agreement. The Union Traction Company entered into possession under the leases, and, until the receiverships hereafter mentioned, operated the roads of the two lessor companies.

On April 22, 1903, the Guaranty Trust Company of New York brought three suits in the court below—one against the North Chicago Company upon three demand notes, dated, respectively, March 20, April 17, and April 20, 1903, for the amount in the aggregate of $563,000; one against the West Chicago Company upon three demand notes, one dated March 20, and two dated April 14, 1903, for the amount, in the aggregate, of $270,000; and the third against the Union Traction Company upon a demand note dated March 20, 1903, for $317,000. The notes upon which the North and West Chicago Companies were sued evidenced indebtedness which by the leases the Union Traction Company had assumed to pay or renew. Judgments by confession were entered in those suits on that day. Thereafter, on the same day, the Guaranty Trust Company filed its three separate judgment creditors' bills in the court below against the three judgment debtors, respectively, containing the usual allegations of a creditors' bill, reciting the public nature of the business carried on by the company defendant therein, describing the various actual or potential controversies alleged to exist with respect to the various franchises of the several companies, and praying for the appointment of a receiver, and, in the case of the Union Traction Company, praying for administrative relief by way of operation of the railways. In each case the judgment debtor was sole defendant. Upon the same day the three companies filed their answers to the respective bills, confessing the bills, and on the same day the court below appointed receivers in each of the suits, with authority to operate the property under the order of the court. The receivers forthwith qualified and assumed possession of the property so leased to, and in the custody of, the Union Traction Company. Following the appointment of the receivers, various petitions were filed by them, setting forth in detail the various interests and rental charges to which the various defendants were subject, and reciting various controversial questions relating to the public rights, and public liabilities with various corporations. No diverse parties were brought into court by these petitions, and no relief sought therein, other than the instructions of the court with respect to the administration of the property. During the receiverships the court authorized the payment of rental accruing under the various leases, and its distribution among the stockholders, respectively, of the North and West Chicago Companies, as dividends. In this way $265,722 on July 15 and October 15, 1903, were paid to the stockholders of the North Chicago Company, and $374,587.50 on May 15 and October 15, 1903, were paid to the stockholders of the West Chicago Company; these payments being made with the consent of the judgment creditor, the complainant in those bills, a part of which payment was made by the receivers of the Union Traction Company by means of a loan made by them under the authority of the court.

On August 15, 1903, David A. Kohn and certain others of the appellants here, as stockholders of the North Chicago Company, filed in the state circuit

court of Cook county, Ill., their bill in their own behalf, and in behalf of all other stockholders of that company, against the Union Traction Company, the North Chicago Company, the Illinois Trust & Savings Bank, and certain other individual defendants, setting forth the incorporation, charter, and capitalization of the several companies named, the holdings by complainants of stock in the North Chicago Company, the ownership of the road, and the leases hereinbefore stated; that the indebtedness of the North Chicago Company at the date of the lease was $2,319,000, evidenced by notes then outstanding which the Traction Company, by the lease, assumed and agreed to pay or renew; the indebtedness of the West Chicago Company, at the date of the leases, of $1,090,000, evidenced by the notes which the Traction Company had agreed to pay or renew; alleged the deposit of securities under the tripartite agreement, the execution of the notes to the Guaranty Trust Company, as stated, and the three judgments entered thereupon—and charges that each of the three suits was begun and the judgments entered pursuant to an agreement theretofore entered into between the Guaranty Trust Company and the Union Traction Company that the proceedings should be had; that the notes upon which the judgments were entered were renewal notes executed at the request of the Union Traction Company, being indebtedness outstanding at the time the respective leases were executed, and the failure of the Traction Company to hold the railroad companies harmless therefrom; alleges the insolvency of the Union Traction Company, that it was subject to be dissolved under the laws of the state of Illinois, and that judicial proceedings had already been commenced for that purpose. The bill further alleges that since the execution of the leases the officers and directors of the North and West Chicago Companies have been designated and selected by the Union Traction Company, and that until July 23, 1903, all the directors and officers of both railroad companies were officers or persons in the service of the Union Traction Company; that at a meeting of the directors of the North Chicago and West Chicago Companies on July 23, 1903, each of the directors—one at a time, resigned—the meeting being controlled by the officers of the Union Traction Company, and a new board of the companies was elected by the remaining directors, who proceeded to elect a president; that the proceedings were secret, without prior notice of the holding of the meeting to any stockholder of either company, and that no stockholder voted, except as some of the directors may have been stockholders, and to an amount not constituting a substantial minority of the shares of stock in either company; that a majority of the officers and directors so elected were not and are not stockholders in either company, but are stockholders or in the service of the Union Traction Company, and were selected by that company, prior to their election, to serve the interests of the Traction Company. The bill then charges that, at the request and direction of the officers and attorneys of the Union Traction Company, the directors of the North Chicago and West Chicago Companies adopted a resolution authorizing the execution to the Union Traction Company of a new lease and tripartite agreement, subject to the approval of the holders of a majority of the stock of the North Chicago and West Chicago Railroad Companies, at a stockholders' meeting to be called for that purpose, and that such amendatory agreement be executed and deposited in escrow, to be delivered to the Traction Company when approved by a majority of the stockholders of each of said companies, which special meeting was called for August 18, 1903. By this amended agreement the stocks on deposit with the Illinois Trust & Savings Bank of Chicago, as trustee under the tripartite agreement of June 1, 1899, continued to be held upon certain trusts declared in the new proposed agreement; and it is charged, with respect to the 20,000 shares of North Chicago Company stock so held, and worth $2,000,000, and the 32,000 shares of West Chicago Company stock so held, and now worth $1,600,000, which under the former leases the lessors had the right to apply toward the payment of their claim against the Union Traction Company, that by the new agreement these rights are waived; that by the proposed amendatory lease the demised property was granted during the full term of 984 years, the rental was reduced in the case of the North Chicago Company from 12 per cent. upon the capital stock to 6 per cent., and in the case of the West Chicago Company from 6 per cent. to 4 per cent., and other changes were made, stated in the bill. The bill prayed that the shares of stock so de-

posited with the Illinois Trust & Savings Bank might be subjected to the payment of the amount due to the North Chicago Company by the Traction Company, and that the latter company might be enjoined from voting such stock, or directing how it should be voted, upon the question of adopting the propored amendatory agreements, and that the trustee and the North and West Chicago Companies, respectively, might be enjoined from voting or permitting the shares of stock to be voted; that a receiver be appointed of such stock, "subject, however, to said rights, if any, which it may appear that any persons or receivers may rightfully have therein"; that the custodian be restrained from delivering the amendatory agreement; that the parties be restrained from modifying or changing the lease, upon the ground that the proposed leases were ultra vires the North and West Chicago Companies, respectively. On the same day the North Chicago Company filed its petition in this suit, praying the court for an injunction restraining the parties complainant and their solicitors, the appellants here, from any interference, both with the meeting so proposed to be held, and from obtaining any writ of injunction from any other court to that end, in which petition the receivers joined. And upon that day the court below entered a restraining order and order to show cause why a temporary injunction should not issue as prayed for. The matter was continued from time to time until October 9, 1903, when the court below entered an order directing that the restraining order of August 15, 1903, be continued, and "made a permanent order of injunction, to prohibit and prohibiting each and every of the respondents, according to its terms, until the final decree of the court upon a full hearing of said petition." The order so continued in force is as follows:

"It is ordered that the said respondents mentioned in said petitions, D. A. Kohn, James J. Townsend, Thomas A. Moran, Levy Mayer, Isaac H. Mayer, Carl Meyer, W. J. Buckley, and Simon Straus, and all other stockholders of the said defendant company, their attorneys, solicitors, agents, representatives, and servants, be, and they hereby are, restrained, until the hearing of the motion for the temporary injunction upon notice as hereinafter mentioned, and until the further order of this court, from in any way interfering with or preventing any other stockholder or stockholders of defendant company, or their proxy or proxies, from voting at the special meeting of the stockholders of defendant company referred to in said petitions, called by said defendant company to be held on the 18th day of August, 1903, at 2 o'clock p. m., or on such other day, if any, as may be appointed for an adjourned meeting by the stockholders attending, pursuant to such call, on the question of the approval or disapproval of each of said amendatory agreements in said petitions referred to, or from preventing or interfering with such defendant company in holding such meeting, or in permitting at such meeting each stockholder of record of said defendant company, present in person or by proxy, to vote upon the question of the approval or disapproval of each of said amendatory agreements, or in certifying the result of such vote to this court under its corporate seal, as contemplated and provided in and by the order of this court entered herein on July 28, 1903, and particularly from instituting or commencing, prosecuting, or carrying on any suits or proceedings in any other court, or from suing out or enforcing any writs of injunction from any other court, to prevent or interfere with any stockholder or stockholders of this defendant company, or his or their proxy or proxies, from or in voting at said meeting so to be held on the 18th day of August, 1903, or on such other day, if any, as may be appointed for an adjourned meeting by the stockholders attending, pursuant to the call of such meeting, upon the question of the approval or disapproval of said amendatory agreements, or either of them, or to enjoin or restrain this defendant from holding said meeting, or from permitting each stockholder of record of said defendant company, present in person or by proxy, to vote at such meeting upon the question of the approval or disapproval of each of said amendatory agreements, and certifying the result of such vote to this court under its corporate seal; and that they also be in like manner restrained from in any way interfering with the proper conduct of such meeting, or the vote of any stockholder or stockholders, or their authorized proxy or proxies, at such meeting, or with the conduct of such meeting as prescribed and directed by the said order of this court above mentioned, or with the carrying out or into

effect of any vote or action taken by said stockholders at said meeting, including the delivery of said amendatory agreements, if so approved, and that the hearing of the said motion for a temporary injunction be, and the same is hereby, set down for Monday, August 17, 1903, at 10:30 o'clock a. m."

On July 28, 1903, petitions were filed in the three creditors' suits by the respective corporations defendants, setting forth the proposed modifications of the leases as herein stated, and praying that the receivers might be instructed to join in such modification and to execute the new agreements; and on the same day the receivers filed their petitions, stating the filing of the petitions by the respective defendants, and asking for instructions. No persons were made parties to those petitions, nor was any process issued thereon; but on August 14, 1903, upon the petition of the receivers of the Union Traction Company, the court authorized the receivers to direct the issuance of proxies to vote the stock held by the trustee to the persons who had been selected by the Union Traction Company.

Under these circumstances the stockholders' meeting was held on August 18, 1903, and the action of the boards of directors of the several companies ratified and confirmed; and the court below on the same day directed the receivers to approve of and join in the execution of the new leases and new tripartite agreement.

From the order of October 9, 1903, this appeal is taken.

Levy Mayer and Thomas A. Moran, for appellants.
John S. Miller and Charles H. Aldrich, for appellees.

Before JENKINS and BAKER, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge (after stating the facts as above). The rule is axiomatic that the courts of the United States should not interfere with proceedings in the courts of the state, except so far as may be necessary to assert and protect a rightful jurisdiction. The rule is emphasized by the provisions of a statute as old as the judicial system of the United States: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Rev. St. § 720 [U. S. Comp. St. 1901, p. 581]. The rule is reciprocally recognized and generally observed by both state and federal courts, because it is essential to the maintenance of harmony and indispensable to the orderly administration of justice. The rule has been declared and its limitations established by the ultimate tribunal, and is so well recognized by the profession that but for the importance of the case under consideration, and the earnest controversy of counsel with respect to the rule, we should deem a reference to the authorities unnecessary. We need not now review the numerous decisions which have led up to the final settlement of the rule, but a brief reference to some of them may not be out of place.

In Freeman v. Howe, 24 How. 450, 16 L. Ed. 749, it was ruled that property held by a marshal under a writ from a federal court could not lawfully be taken from his possession by a proceeding issuing from a state court; and this upon the ground that the possession of the marshal was the possession of the court, and that no other court with merely concurrent authority could be allowed to disturb that possession. In Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257, where under similar circumstances the marshal was sued in trespass for taking the goods,

it was held that 'the action did not come within the principle of Freeman v. Howe, because the action did not seek to interfere with the possession of the property taken.   As the officer must determine for himself whether the property which he proposes to seize is legally liable to be taken, he is not protected by his writ if he takes property belonging to others than the defendant in the writ, and may be sued therefor in another court of competent jurisdiction.   Recognizing the rule that the tribunal which has obtained jurisdiction of a case has exclusive right to decide every question arising in the case, the court states that the rule is subject to limitations, and is confined to suits between the same parties or privies, seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all matters which may by possibility become involved in it.

In Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981, the court reviews the various decisions, affirming the principle declared in Buck v. Colbath, and seems to approve the principle that "courts, for the purpose of protecting their jurisdiction over persons and subject-matter, may enjoin parties who are amenable to their process and subject to their jurisdiction from interference with them in respect of property in their possession, or identical controversies therein pending, by subsequent proceedings as to the same parties and subject-matter in other courts of concurrent jurisdiction," and also approves of a remark by Mr. Justice Miller in Buck v. Colbath, that:

"It is not true that a court, having obtained jurisdiction of a subject-matter of a suit, and of parties before it, thereby excludes all other courts from the right to adjudicate upon other matters having a very close connection with those before the first court, and in some instances requiring the decision of the same questions exactly.  In examining into the exclusive character of the jurisdiction of such cases, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits."

In Moran v. Sturges the court sustains the exclusive jurisdiction of the United States District Court in admiralty over the subject-matter, and that the proceeding in the state court was an unlawful interference with the proceedings in the admiralty.

In re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. Ed. 782, the general principle stated is reaffirmed and declared to be firmly established.

In Central National Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807, the court reviews the various cases bearing upon the subject and reaffirms the rule.

In Farmers' Loan & Trust Company v. Lake Street Elevated Railroad Company, 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, the principle is thus declared:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and, for the time being, disables other courts of co-ordinate jurisdiction from exercising a like power.  This rule is not restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature."

We have had occasion not infrequently to speak to this rule, following, as we thought, the pronouncement of the ultimate tribunal with respect to its scope and limitations. Central Trust Co. v. Grantham, 83 Fed. 540, 27 C. C. A. 570; Leathe v. Thomas, 97 Fed. 136, 38 C. C. A. 75; Baltimore & Ohio Railroad Company v. Wabash Railroad Company, 119 Fed. 678, 57 C. C. A. 322; McDowell v. McCormick, 121 Fed. 61, 57 C. C. A. 401; Woods v. Root, Secretary of War, 123 Fed. 402, 59 C. C. A. 206; Copeland v. Bruning (C. C. A.) 127 Fed. 550.

In Baltimore & Ohio Railroad Company v. Wabash Railroad Company we stated the rule to be as follows:

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399; Farmers' Loan & Trust Co. v. Lake Street El. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667. We have followed this rule, declaring 'that the court which first obtains possession of the res or of the controversy, by priority in the service of its process, acquires exclusive jurisdiction for all the purposes of a complete adjudication.' 505,000 Feet of Lumber, 24 U. S. App. 509, 517, 12 C. C. A. 628, 65 Fed. 236. The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but, between state courts and those of the United States, it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co., supra; Merritt v. Steel Barge Co., 24 C. C. A. 530, 79 Fed. 228, 49 U. S. App. 85. The rule is limited to actions which deal either actually or potentially with specific property or objects. Where a suit is strictly in personam, in which nothing more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined; and this because it neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with law. Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983; 8 Rose, Notes, 1010. The doctrine is lucidly stated by Judge Thayer in Merritt v. Steele Barge Co., supra. Subject to the conditions stated, where jurisdiction, concurrent with the state court, exists in the federal court, parties have the right—the necessary diversity of citizenship existing—to invoke that concurrent jurisdiction, and it may not be denied them."

The difficulty lies not in an understanding of the principle of the rule, but in applying it correctly to the various cases as they arise. Bearing in mind, as stated in Buck v. Colbath, supra, that jurisdiction rightfully assumed does not "exclude all other courts from all right to adjudicate upon other matters having a very close connection with those before the first court, and in some instances requiring a decision of the same questions exactly," and that, in determining the question of exclusive jurisdiction, "we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties in the different suits," it remains to ascertain the nature of the bill filed in the creditors' suit, the relief sought and allowable under the bill, the issues therein proper to be resolved and determined by the

court below, the parties involved and their relations to the matter, and the nature and object of the bill filed in the state court, in order to determine the question whether the latter suit is an unjust interference with the rightful jurisdiction of the court below.

The bill is a creditors' bill founded upon the judgment for $565,-081.22, recovered April 22, 1903. It sets forth the ownership by the North Chicago Company of certain franchises and railroads, subject to the mortgage of $3,171,000, and another mortgage of $1,614,000, the lease of the property to the Union Traction Company of June 1, 1899, and the deposit of the shares of stock stated in the lease; that the company has no other property which could be subjected to the payment of its debts; that it has a floating indebtedness of about $2,316,000, presently maturing, and which the Union Traction Company had by its lease agreed to pay or renew; that, if the Union Traction Company fully kept and performed the terms of the lease, there would be adequate provision for the payment of the floating indebtedness and of the interest upon the bonded debt; that the corporate life of the defendant corporation is for a term of 99 years from February 14, 1859; that the city of Chicago claims that a large number of the franchises of the defendant would expire in the year 1903, and in subsequent years (some of them on the 30th of July, 1903), and had threatened that, unless the Union Traction Company should consent to terms satisfactory to the authorities of the city, the right and privilege of transporting passengers would be sold by the city to some one other than the railroad company, with the effect, substantially, of transferring to other persons the franchises owned by the defendant corporation, and leased to and exercised by the Union Traction Company—and charged that the city, oppressively, illegally, and unreasonably, would entertain no application for the renewal of the franchise unless the defendant company would renounce, abandon, and repudiate the obligation and authority claimed to have been conferred and imposed by the Legislature of the state, and the right claimed to have been granted for the operation of certain of their railways during the period of 99 years from February 14, 1859; that that action of the city had destroyed the credit of the defendant corporation, so that it is impossible to obtain a renewal of its floating indebtedness, the credit of the Union Traction Company had been destroyed, and the company was insolvent; that, in case of default by the Union Traction Company in the performance of the condition of the lease, the only property which the defendant possesses, which could be used for the satisfaction of its debts, would be the several street railways owned by it along the routes mentioned, with their equipment and appurtenances, and 2,501 shares of the capital stock of the North Chicago City Railway Company, and that the dividend payable upon that stock under the lease would be insufficient to pay the interest upon the mortgages; that the railroads owned by the defendant corporation are incapable of being properly operated apart from the general system of railways owned by the North Chicago City Railway Company; and that the earnings of the railroads owned by the defendant corporation, if separately operated, would not suffice to pay the deficiency of interest upon the mortgage debts of the defendant. It then sets forth the tripartite agreement previously herein stated, and the

deposit thereunder of the 20,000 shares of the capital stock of the defendant; that, if the franchises and charter rights of the Union Traction Company and lessor company with respect to street occupancy are protected and preserved intact until they can be fully determined by final decree, the value of the franchises and property will be greatly augmented, and the fund for the payment of creditors greatly increased; that the corporation had not theretofore applied any of the rentals received from the Union Traction Company under the lease to the payment of any of its floating indebtedness, and does not intend so to apply the rentals. It then prays judgment as follows: First. That a receiver be appointed to take possession of all the property of the defendant corporation, and to enforce its rights in respect to the lease to the Chicago Union Traction Company, and in respect to the tripartite agreement. Second. That the complainant's rights may be ascertained, and its priority upon the income and assets of the defendant corporation be established and enforced; that the rights of all other creditors may be ascertained; and that the court will marshal the assets and administer the funds, ascertaining the respective liens and priorities, and decree and enforce the rights of all creditors as they may be finally ascertained upon interventions or applications of each such creditor or lienor. Third. That if the income of the property, and the sale of such portions of it as may be sold without detriment to the value of the remainder, shall prove insufficient for the payment of the claims, the entire property be sold, and the proceeds be applied to the payment of the debts in due order of priority, "and the surplus, if any, distributed among the stockholders in such manner as the court may direct."

The bill was confessed by the North Chicago Company, the sole defendant therein, and no issue was raised or presented for judicial determination.

The bill, it will be observed, is a creditors' bill, seeking the payment of the complainant's judgment in the first instance, and, in subordination thereto, the payment of the claims of other creditors, and, being confessed, the matter becomes one of mere administration. It was, of course, proper for the court to take into its possession, upon the bill filed against the Union Traction Company, the custody of the railroad. The North Chicago Company was not in possession and was not operating any road. Its entire property was leased to the Union Traction Company. Its entire income consisted in the rentals received from the Union Traction Company. It had no disbursements to make from that income in respect of its debts, except upon default by the Union Traction Company, for the interest upon its mortgage and floating indebtedness was to be paid by the lessee, and the principal of the indebtedness to be paid or renewed by it as it should mature. The rental was manifestly a fixed percentage of the capital stock of the North Chicago Company intended for distribution among its stockholders. So that practically all that the court below, through its receivers, could obtain from the North Chicago Company, were the rentals payable by the Union Traction Company, and these rentals could undoubtedly have been applied to the payment of the complainant's debt; but in fact, with the consent of the complainant, and under the order of the court, the receivers paid to the stock-

holders of the North Chicago Company, as dividends upon stock—except as to the stock held in trust—$265,722 on account of rentals due July 15 and October 15, 1903.

The bill, then, being a mere creditors' bill, with possibly the right of the court in a proper proceeding to determine and assert the rights of the defendant corporation as against the city of Chicago, the duty of the court would seem to be clear, and that was to marshal assets, to collect the rentals to become due under the lease, to protect the rights of the North Chicago Company under the lease, to obtain satisfaction of the complainant's debt and of all other debts due by the company, to enforce payment of those debts from the lessee company, which had obligated itself to pay them, and if a sale were not necessary to accomplish this, and the Union Traction Company was not able to meet its obligations under the lease, to take from it possession of the leased property and return it to the lessor, for the receivership did not operate to dissolve the corporation or to suspend its corporate faculty.

We now come to the nature of the bill filed in the state court, the prosecution of which was enjoined. It was presented by certain stockholders of the North Chicago Company, on behalf of themselves and all other stockholders, against the Union Traction Company, the Illinois Trust & Savings Bank, and certain individual defendants, the receiver not being a party to the bill. It charges that the judgments obtained by the Guaranty Trust Company were recovered in collusion with the Union Traction Company, and for debts which the latter company was bound, under its lease, to pay and discharge; that the directors of the North Chicago Company were officers, attorneys, or persons in the service of the Union Traction Company; that, at a special meeting of the board of directors, held secretly and without notice, and which was controlled by the officers and attorneys of the Union Traction Company, each of the directors separately resigned, and a new board of directors was elected; that the stockholders had no voice in the selection of the directors, and were deprived of the right to vote; that the majority of the officers and directors then elected were not interested in the North Chicago Company, but all of them were interested, as stockholders or otherwise, in the Union Traction Company, and are subservient to and under the control of that company; that, at the request and by the direction of the officers of the Union Traction Company, this board of directors adopted a new lease with the Union Traction Company, subject to the approval of the holders of a majority of the stock of the North Chicago Company at a stockholders' meeting to be called for that purpose; and the agreement there adopted was deposited in escrow, to be turned over when approved by a majority of the stockholders, and when a like agreement by the West Chicago Company should be made and delivered to the Traction Company. By the provisions of the amendatory lease, the term was extended from 99 years, as specified in the original lease, to 984 years, and the rental was reduced from 12 per cent. to 6 per cent. upon the stock of the North Chicago Company, and that the rights reserved to the North Chicago Company with respect to the 20,000 shares of stock deposited under the tripartite agreement were waived; that the Union Traction Company claimed the right and threatened

to require the bank trustee to vote the shares of deposited stock in accordance with the directions of the Traction Company. It is claimed by the bill that, in the absence of legislative authority, the proposed lease is ultra vires the North Chicago Company; that, if otherwise valid, the consent of every stockholder was necessary, and that a single dissenting stockholder could enjoin its execution; that the Union Traction Company has no power of ownership over the shares of stock so deposited, and no power or right to vote that stock. The bill prayed a decree enjoining the voting of the stock upon the question of the ratification of the proposed amendatory lease, for an accounting between the North Chicago Company and the Union Traction Company, and the payment by the latter of the amount found due, in the payment of which default had been made by the Traction Company, and that the shares of stock deposited may be sold in such manner as the court may direct to satisfy the debt, "subject to such rights, if any, which it may appear that any person or receivers may rightfully have in and to any such shares of stock"; that the proposed modification of the lease or tripartite agreement may be enjoined, and for a general relief in the premises.

Does the prosecution of this suit in any way encroach upon the rightful jurisdiction of the court below? It in no way seeks to take from the receivers the possession of any physical property of the North Chicago Company. It in no way affects the receivers in the management of the property under their receiverships. It in no way affects any issue presented under the creditors' bill, or arising under any intervening petition. Under a well-recognized principle, the court below might, at the commencement of the proceedings under the creditors' bill, have directed the receivers of the Union Traction Company to disavow the lease, and to account only for a fair rental value during possession of the property by the receivers. It did not do that, but ratified the lease by directing payment of rental thereunder, and all parties treated the lease as existing. The complainants in the bill in the state court sought to prevent an extension of the term of the lease for a long period at a greatly reduced rental. That was matter which concerned the parties to it, and with which the receivers had rightfully nothing to do. There was no controversy respecting it under the creditors' bill. There could be none, for, according to the allegations of the bill in the state court, the North Chicago Company, the sole defendant to the creditors' bill, controlled by the Union Traction Company, consented to the proposed amendment, and petitioned the court, in which the receivers united, to enjoin the stockholders of the company from asserting their supposed rights with respect to the alleged wrongful action of the board of directors of the North Chicago Company. All this has nothing to do with the marshaling of the assets of the North Chicago Company, and the subjection of them to the payment of its creditors. Surely, when the Union Traction Company has assumed the payment of all of the debts of the North Chicago Company, and has failed in its obligation, and has obtained control of the directors of the North Chicago Company, so that they act solely in the interest of the Union Traction Company, it ought not to be permitted that, ex parte, without opportunity of hearing, or at all, the stockholders of the North Chicago Com-

pany should be enjoined from asserting their supposed rights in a proper forum. We do not undertake to pass upon the allegations of the bill filed in the state court. We must assume for the present purpose that they are true. We only say that the assertion of those rights in a state court neither interferes with the possession of any property in the hands of the receivers, nor with any issue raised by, or proper to be adjudicated under, the creditors' bill. But it is said that the court below had the power to direct and require the debtor to execute any instrument necessary for the protection of the res, and that, in the administration of the three estates, the North Chicago Company, the West Chicago Company, and the Union Traction Company, the court could compose and settle differences between them as matter of administration of the estate, and that the modification of the lease agreements was in the nature of settlement. We may concede that the court may require the execution by the debtor of any instrument necessary for the protection of the res, and may compromise disputes between the different estates with respect to the res before the court; but we are not prepared to say that the court, in the administration of these three estates, could compel the lessor companies, against their will, to extend the lease of their lines of railway from 99 years to 984 years, or require them to abate for that long period the rental which had been agreed upon. The court has that property in possession temporarily, and to conserve it in the interest of the creditors, and to return it when those claims are satisfied, or to dispose of the property, as it exists, by sale. We cannot, however, believe that it can be properly within the province of the court to compel a debtor company to extend the lease of its property from 99 to 984 years to a confessedly insolvent corporation at a greatly reduced rental. That would not be administration, but the exercise of contractual capacity lodged not with the courts, but with the parties. It might with equal propriety be said that it was within the power of the court, as an act of administration, in a suit to which the city of Chicago was not a party, to determine the right of the city with respect to the use of its streets by these railway corporations. That right might be adjudicated in an independent suit, or by an ancillary bill, to which the city should be made a party, because such a proceeding would be in protection of the res, and its possession by the receivers, under the allegation that the city is threatening and about to tear up the railway tracks. That would be judicial action, not administrative action. Without question, the combination of all the railways under one management and control is an imperial scheme, possibly conducive to the public welfare, possibly beneficial to the three corporations interested, and possibly lifting the Union Traction Company out of its insolvent condition; but the property was not taken by the court to carry out grand schemes founded on supposed future benefits. It has the property simply to conserve it in the interests of creditors; caring for it, indeed, with due regard to public interests, because it is impressed with a public service. But a scheme like that proposed should be entered upon and carried out by those interested and whose money is at stake, and should not be imposed upon them in invitum through the action of the court. It is said, however, that the three corporations were consenting parties, and that

the appellant stockholders of the one corporation are bound by the act of their board of directors. That is begging the question, for their bill in the state court charges fraud in the consummation of the scheme; that, while seemingly the action of the three several boards of directors of the three several corporations, it was in fact only the action of the Union Traction Company, operating in its own interest and against the interest of the lessor companies. It is also charged that the action of the boards of directors of the two lessor companies was ultra vires the corporation, and that no such lease is authorized by law. If that be true, the stockholders are not estopped by the act of their directors. Ward v. Joslin, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093. If the suit, so far as it seeks a receiver of the stock in the hands of the trustee, may be deemed an interference with its constructive possession by the receivers of the federal court, and therefore objectionable, the appellants should not be prevented from prosecuting in the forum of their choice because they have sought too much. They would still be entitled to prosecute their suit with respect to so much thereof as attacks the action of their board of directors and the validity of the amended lease and amendatory tripartite agreement. Such prosecution would not trench upon the rightful jurisdiction of the court below.

Anxious to preserve the federal jurisdiction from improper interference by a state tribunal, we are equally desirous that there should be no improper interference with the rightful jurisdiction of a state court by a federal tribunal. We are unable to perceive that the prosecution in the state court of the suit enjoined by the decree appealed from does in any way interfere with the possession of the res by the receivers, or encroaches upon any rightful jurisdiction under this creditors' bill.

The decree or order of October 9, 1903, is reversed, and the cause is remanded, with the direction to the court below to set the same aside, and to vacate the order of August 15, 1903, and to dismiss the petition of the North Chicago Company filed August 15, 1903.